## Cox v. Commonwealth.

(Decided September 27, 1918.)

## Appeal from Rockcastle Circuit Court.

1. Criminal Law—Separation of Juror—Burden.—Where a juror inadvertently separates himself from his fellows after the trial has begun, in a case where the punishment may be death, the burden is upon the Commonwealth to show that the separation did not expose the juror to improper influences and that the defendant was not prejudiced thereby.

2. Criminal Law—Separation of Juror.—The mere fact that a juror was unintentionally separated from his fellows for a brief period, is not reversible error if the Commonwealth show that the separation was inadvertent and unintentional, and that the juror was not tampered with or influenced.

3. Criminal Law—Absence of Juror.—The juror in this case was absent from his fellows from one to five minutes, saw and spoke to no one except the county judge and some citizens of whom he made an inquiry but not with reference to the case, held not prejudicial error.

C. C. WILLIAMS for appellant.

WALTER B. FLIPPIN, CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant Cox shot and mortally wounded James Sutton, in Rockcastle county, on June 26, 1917. Sutton died on the following morning. On August 25, 1917, the grand jury of Rockcastle county returned an indictment accusing Cox of wilful murder. At the instance of Cox the case was continued until the May term, 1918, when a trial was had, Cox found guilty of voluntary manslaughter and his punishment fixed at confinement in the state penitentiary for a period of ten years.

In due time motion and grounds for a new trial were filed in which several reasons were assigned, but upon this appeal only two grounds are relied upon: (1) because the jury, during the progress of the trial, was allowed, by the officers in charge, to separate; that the jury was not kept together as the law requires; (2) because a juror named Rice had formed and expressed an opinion adverse to the appellant before he was taken on the jury. Counsel for appellant frankly states that

the two grounds above set forth are the only ones relied upon.

With reference to the first contention that the jury was allowed to separate after they had been sworn and placed in charge of the sheriff, it must be admitted that one juror, named Rice, did separate for a few minutes from the balance of the jury. It occurred in this way: The trial began upon Saturday, but the evidence was not concluded on that day; on Saturday afternoon the sheriff was sworn with respect to keeping the jury together and the jury duly admonished. On Sunday they were taking a walk; they went out of town with the sheriff to visit his brother, who was sick; they came back into town and went to a spring to get a drink; no complaint is made up to this point. While at the spring different members of the jury and the sheriff drank water and engaged in conversation. A toilet was nearby and the juror named Rice entered the toilet for the purpose of attending to a call of nature.

The sheriff and other members of the jury were the only persons present; after remaining there a few moments the sheriff said, "If you are all ready, let's go," and they went back up the street leading to the depot of Mt. Vernon. Neither the sheriff nor any member of the jury observed that Rice was not present. About the time they reached the depot, which was only a short distance away, Rice came up and remarked upon the fact that he had been lost. When he came out of the toilet the jury was out of his sight and he went up the street towards "Fish's store," where he saw Judge Mullins and other citizens and inquired where the sheriff and the balance of the jury were. Upon being told, the juror Rice immediately turned and followed the sheriff and jury until he overtook them. There was no one along the street over which the juror Rice traveled, and he did not see or communicate with any person except the county judge and the citizens of whom he made the inquiry. The sheriff and other eleven members of the jury did not miss Rice until he came up and remarked that he had been absent. Rice had not been absent more than three to five minutes. The evidence shows plainly he did not communicate with any person with regard to the case on trial, and there is no attempt to show he was influenced in any way during the short interval he was absent from the balance of the

jury; that his absence was wholly unintentional is admitted by every one and he is not charged with any intentional wrongdoing.

By section 244, Criminal Code, it is provided that a jury during the trial of a case in which capital punishment may be inflicted, "shall not be permitted to separate, but shall be kept together in charge of the proper officer."

Section 251 of the Criminal Code provides for cases of emergency arising out of the sickness of a juror after the trial has begun and allows the juror to separate from his fellows: "if the sickness of a juror be temporary, the court may permit him to separate from the other jurors and may place him in charge of an officer or not, in his discretion."

In the recent case of Barnes v. Commonwealth, 179 Kentucky, 725, these questions were discussed: "After the jury had been sworn and the court had adjourned for noon the first day of the trial, the sheriff started with the jury in charge to a hotel some squares distant, for dinner, and one of the jury, who weighed about three hundred and forty pounds, said he was not well and did not feel able to walk to the hotel. Another juror who had an automobile standing near the court house offered to take him in the automobile if the sheriff would permit him; the sheriff gave his permission, and with the rest of the jurors proceeded to the hotel on foot while these two jurors went in the automobile, one being upon the front and the other upon the rear seat. The two jurors were out of the sight and hearing of the sheriff and the rest of the jury for but a very short time, as they overtook the sheriff and those jurors on foot and drove along within thirty feet of them in their sight to the hotel where they all joined again." The question was raised in the Barnes case that the jury was allowed to separate, and upon consideration of the question this court said: "While we fully appreciate and approve the rigidity of the rule against permitting a separation of the jury in a case where capital punishment may be inflicted, we do not think this separation furnishes, under the circumstances, grounds for a reversal. Whenever there has been a separation of the jury it devolves upon the Commonwealth to show that such separation gave no opportunity for the exercise of improper influence upon mem-

bers of the jury. Campbell v. Commonwealth, 162 Ky., 106; Deacon v. Commonwealth, 162 Ky., 188; Johnson v. Commonwealth, 179 Ky., 40; Heck v. Commonwealth, 163 Ky., 518.''

The juror Rice testified upon investigation that he did not see or talk to any one while away from the balance of the jury, except to make inquiry of the county judge as to where the sheriff and the other jurors were. He was asked:

''Q. How long were you away from that jury? A. From the time I first missed them, I guess from one to five minutes. Q. Did you intentionally separate yourself from that jury? A. I did not. Q. Did you meet anybody after you missed the jury in going up the street, out the street for the distance you have talked about, to overtake the jury? A. If I did I don't remember it. Q. Did you speak to any one else except Judge Mullins? A. If I did I don't remember speaking to anybody, as much as howdy. Q. Where did you get with them? A. I got with them along there on the railroad.''

All the other evidence sustains that of the juror Rice.

These facts considered, we are of opinion that the separation of the jury for the few minutes, under the circumstances, was not prejudicial error.

The second contention made by appellant that the juror Rice had formed and expressed an opinion before he was accepted upon the jury is likewise untenable. According to the evidence heard upon the investigation on this point, Rice spent the night at the house of a man named Bustle. During the evening and before they retired at night, Bustle, who was a witness in another murder trial, proceeded to tell Rice all the facts and circumstances connected with the other murder. Rice had been away for some months and did not appear to be acquainted with what had transpired in that vicinity during his absence. Bustle states that he also told Rice of the killing of Sutton and that Rice then said it was a bad case. Rice denies this and says that the Cox case was not mentioned. Bustle is an ex-convict, and the evidence he gave upon the investigation was not of a nature to carry conviction. His wife also filed her affidavit in support of her husband's statement, but it does not lend any strength. The learned trial judge, in whom we repose much confidence, being conversant with all the facts and no doubt possessing a knowledge of the charac-

ter of the witnesses, overruled the motion for a new trial, and we concur in his finding.

It is unnecessary to discuss the facts of the case or the other questions made in the motion and grounds for new trial, because appellant does not rely upon them, and they do not appear to require attention.

Judgment affirmed.